UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

UNITED STATES OF AMERICA

v.　　　　　　　　　　　　　　　　　　　CRIMINAL ACTION NO. 5:23-cr-00129

DEHAVEN DARNELL CRAIG

### MEMORANDUM OPINION AND ORDER

Pending is Defendant Dehaven Darnell Craig's Motion (1) to Make Competency Ruling, (2) to Schedule Trial Date, and (3) for Writ Immediately Transferring Him from BOP into USMS Custody Pending Trial [ECF 67], filed June 24, 2024, to which the Government responded on July 1, 2024.

On June 20, 2024, the Court convened for a status conference at which the parties requested, and were orally granted, thirty-days to negotiate a potential resolution of this matter before a trial date is scheduled. On June 24, 2024, the Court entered a Memorandum Opinion and Order (1) finding Mr. Craig competent, (2) confirming the grant of the thirty-day negotiation period, and (3) scheduling a status conference for Friday, July 26, 2024, at 11:30 a.m. for purposes of hearing the parties on the outcome of their negotiations and, to the extent necessary, setting a schedule for future case events. [ECF 66]. In light of these rulings, the only remaining issue contained in the instant Motion is Mr. Craig's writ request, which the Court addresses herein.

## I.

On August 8, 2023, a single-count Indictment was returned against Mr. Craig, charging him with first-degree murder in violation of 18 U.S.C. §§ 1111(a) and 7(3). Mr. Craig is alleged to have murdered his cellmate while incarcerated at Federal Correctional Institution at Beckley ("FCI Beckley).

On June 11, 2024, upon learning of the Bureau of Prisons' ("BOP") intention to transfer Mr. Craig to ADX Florence, a supermax facility in Colorado, the Court -- with the parties' consent -- wrote a letter to the Director of the BOP requesting Mr. Craig's contemplated transfer be held in abeyance pending the outcome of his trial. On June 17, 2024, supervisory CLC attorney for the BOP Christine Lewis sent a letter to Assistant United States Attorney Joshua Hanks indicating the BOP's intention to proceed with Mr. Craig's transfer despite the Court's request. On June 18, 2024, Mr. Hanks forwarded the letter to the Court and defense counsel via email.

Mr. Craig now moves the Court to issue a writ directing that he be removed from BOP custody into United States Marshal Service ("USMS") custody so "the risk of his removal to ADX Florence is off the table." [ECF 67 at 10]. Mr. Craig asserts (1) the BOP's stated reasons for transfer are an abuse of discretion and invalid, and (2) the resulting delays in his return to court for proceedings in this case, in the event he is transferred, have the potential to impact his Sixth Amendment right to a speedy trial and the Speedy Trial Act.[1]

---

[1] Despite raising the argument in his Motion, Mr. Craig states he "is not going through the applicable constitutional standard to assert a speedy trial violation at this time[,]" but "[s]hould he be moved to ADX [Florence], . . . it seems manifestly unavoidable that such a violation will arise, or at least certainly become a colorable enough issue to be fully litigated before this Court." [ECF 67 at 9-10]. Accordingly, the Court declines to address the issue at this time.

2

Specifically, Mr. Craig takes issue with the BOP's cited reasons for transfer, namely, his own safety and his mental health concerns. He contends these cited reasons are invalid inasmuch as the Warden at FCI Beckley has expressly stated he could ensure Mr. Craig's safety, and the BOP's own psychological expert opined Mr. Craig's mental health was sound enough to deem him competent to stand trial. Simply put, Mr. Craig maintains the "BOP's own personnel do not support Ms. Lewis' stated reasons for moving [him] from the Southern District of West Virginia where his murder case is pending to ADX [Florence] – or over 1,450 miles away." [*Id*. at 4]. He further contends "it is laughable" to suggest transfer to ADX Florence would benefit his mental health given the extreme detention conditions at the facility. [*Id*. at 5]. For instance, Mr. Craig notes, *inter alia*, inmates at ADX Florence are "locked down in solitary confinement for 23 hours a day" and kept under restraint -- handcuffed and shackled -- for the hour they are allotted outside their cells. [*Id*. at 5, 6]. Mr. Craig thus asserts:

> Given the conditions at ADX [Florence], and the adverse impact such would have not just on [his] interests – but his access to and having the meaningful benefit of counsel, it is odd that [he] has been allowed to stay at FCI Beckley for almost two years. It's only as it is more likely he will be found competent and soon go to trial that [the] BOP suddenly feels it is necessary to move him over 1,400 miles away where access to counsel will be limited if not non-existent, and where he will effectively be locked down until his case goes to trial.

[*Id*. at 6]. Additionally, Mr. Craig appears to briefly assert transfer to ADX Florence could implicate the anti-shuttling provisions under the Interstate Agreement on Detainers Act ("IADA"), citing, without elaboration, *United States v. Woods*, 621 F.2d 844 (6th Cir. 1980) in support. [*See id*. at 10]. Accordingly, Mr. Craig requests transfer into USMS custody "where he may be detained in a West Virginia Regional Jail pending the resolution of this case." [*Id*. at 6-7].

While echoing the desire for Mr. Craig to remain in this District pending the outcome of his trial, the Government nonetheless opposes Mr. Craig's motion inasmuch as "the

3

BOP retains authority and discretion regarding the placement of sentenced federal prisoners within BOP facilities" under 18 U.S.C. § 3621. [ECF 68 at 1-2]. The Government asserts the IADA is not implicated in this matter, and Mr. Craig's reliance on *Woods* is ultimately misplaced inasmuch as it involves a different question than that posed herein. The Government further contends state facilities are ill-equipped "to adequately address [Mr. Craig's] security and mental health requirements[,]" while the BOP has specially trained mental health professionals familiar with his case and staff who are better equipped and trained to ensure his safety and the safety of others. [*Id*. at 4]. The Government thus objects to Mr. Craig's transfer into USMS custody, despite its desire for him to remain within the District.

## II.

"The federal government and most states . . . are signatories to the IADA, which sets out procedures by which one jurisdiction can resolve its charges against a prisoner in another jurisdiction's custody." *United States v. Peterson*, 945 F.3d 144, 150 (4th Cir. 2019) (citing *New York v. Hill*, 528 U.S. 110, 111 (2000)). Broadly speaking, "this compact aims to remove uncertainties surrounding out-of-jurisdiction charges against a prisoner and to prevent interruptions to programs of treatment and rehabilitations." *Id*. (citing 18 U.S.C. app. 2, § 2, art. I.) Article IV of the IADA includes the anti-shuttling provision. *Id*. Pursuant to that section, "the indicting jurisdiction must retain custody of a prisoner and dispose of his charges before transferring him back to the sending jurisdiction." *Id*. (citing 18 U.S.C. app. 2, § 2, art. IV(e)). Article IV is "set in motion when the indicting jurisdiction files a detainer and the prisoner is sent to that jurisdiction." *Id*. (citing *United States v. Mauro*, 436 U.S. 340, 343-44 (1978)).

4

Mr. Craig is currently serving a 100-month sentence imposed by the United States District Court for the Northern District of West Virginia for violating 18 U.S.C. § 922(g)(1). Prior to his indictment in this matter, he was serving his sentence at FCI Beckley. On August 8, 2023, Mr. Craig was indicted for the alleged murder of his cellmate in violation of 18 U.S.C. §§ 1111(a) and 7(3). A warrant was subsequently issued to bring him before the United States District Court for the Southern District of West Virginia to answer to the charge. No detainer was filed by the United States on the Indictment. Mr. Craig's case thus does not trigger application of the IADA, nor does the Court see how his impending transfer to ADX Florence would implicate the anti-shuttling provisions of the IADA.

While Mr. Craig cites to *United States v. Woods*, 621 F.2d 844 (6th Cir. 1980), his reliance thereon is misplaced inasmuch as *Woods* involved different circumstances than those at issue herein. In *Woods*, the Sixth Circuit addressed the question of "whether a detainer lodged by one federal judicial district is sufficient to trigger the [IADA's] operation with respect to a prosecution in another federal district, which obtains the prisoner's presence through a writ of habeas corpus ad prosequendum to face unrelated charges in that district." *Woods*, 621 F.2d at 845. The Sixth Circuit answered the question in the negative, holding that the filing of the detainer in the Western District of Kentucky failed to trigger the IADA's operation as to the unrelated charges in the Eastern District of Kentucky. *Id*. at 846. The Sixth Circuit also recognized the Eighth Circuit's holding in *United States v. Krohn*, that the IADA "does not apply to prisoner transfers from one federal district to another, because the United States is 'one jurisdiction under the Agreement.'" *Id*. at 845 n.1 (quoting *United States v. Krohn*, 558 F.2d 390, 392 (8th Cir. 1977)). *Woods* is thus inapposite to the instant matter.

**III.**

In sum, Mr. Craig has failed to produce any authority that would permit the Court to order that Mr. Craig remain in this District pending the outcome of his trial. As Mr. Craig recognizes, the BOP possesses plenary authority under 18 U.S.C. § 3621(b) to designate his place of imprisonment. The Court thus lacks the ability to stop Mr. Craig's impending transfer to ADX Florence. Accordingly, the Court **DENIES** Mr. Craig's Motion [**ECF 67**].

The Clerk is directed to send a copy of this written opinion and order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: July 26, 2024



Frank W. Volk
United States District Judge